**Alfred C. CHIDESTER and Michael A. Janeczko, Plaintiffs–Appellants,**

v.

**EASTERN GAS AND FUEL ASSOCIATES; Beacon Holding Company; Beacon Exploration Company; Mohawk Oil & Gas Corporation; and Beacon Exploration Company of Texas, Defendants–Appellants.**

No. 91CA1469.

Colorado Court of Appeals, Div. III.

Nov. 5, 1992.*

Rehearing Denied March 11, 1993.

Certiorari Denied Oct. 4, 1993.

* Prior Opinion announced September 10, 1992 was Withdrawn. Petition for Rehearing Granted.

Strate and Tondre, P.C., Brice A. Tondre, Wheat Ridge, for plaintiffs-appellants.

Welborn Dufford Brown & Tooley, P.C., David W. Furgason, Scott J. Mikulecky, Denver, for defendants-appellants Eastern Gas and Fuel Associates, Beacon Holding Co. and Beacon Exploration Co. of Texas.

Robert A. Lees & Associates, Robert A. Lees, Denver, for defendants-appellants Beacon Exploration Co. and Mohawk Oil and Gas Corp.

Opinion by Judge SMITH.

Plaintiffs, Alfred Chidester and Michael Janeczko, appeal the dismissal of all of their claims against defendants, Eastern Gas and Fuel Associates (Eastern), Beacon Holding Company (Holding), Beacon Exploration Company (Beacon), Mohawk Oil & Gas Corporation (Mohawk), and Beacon Exploration Company of Texas (Beacon/Texas). We affirm in part and reverse in part.

This lawsuit arises out of plaintiffs' oral agreement, in 1981 and 1982, to accept employment as officers of Holding and its wholly owned subsidiaries, Beacon, Mohawk, and Beacon/Texas. These defendants were all Colorado corporations that comprised defendant Eastern's oil and gas division in the early 1980s.

In 1984, Eastern curtailed the activities of this division, eliminating plaintiffs' positions, and in 1985, it sold all of its stock and holding to NICOR. NICOR, in turn, sold all of its interest in Mohawk and Beacon to Beacon Acquisition in 1986.

Plaintiffs' lawsuit asserted ten claims against defendants. All claims were disposed of through various motions for judgment on the pleadings, summary judgment, and motions to dismiss granted in defendants' favor.

## I.

First, plaintiffs contend that the trial court's rulings dismissing their claims under the contract were in error. We agree in part.

In support of these claims, plaintiffs generally alleged that, in 1981 and 1982, defendants' executives offered and induced them to take key positions in the operationally

troubled oil and gas division. Among the inducements offered, they alleged, were representations that defendants' commitment to the oil and gas venture was long-term, specifically, plaintiffs would have a minimum of five years and a $25 million annual budget to make the division viable, an accomplishment which defendants represented would result in the division becoming a permanent part of defendant Eastern. Additionally, defendants represented that an integral part of plaintiffs' overall compensation package was the expected revenues under an Incentive Participation Plan (Plan) wherein plaintiffs would receive "awards," that is, a percentage (20% and 50%) of the revenues (credits) from oil and gas wells in which Holding and its subsidiaries held or acquired an interest, and special "bonuses" upon the sale of any such well if the proceeds from the sale were not reinvested in new wells.

Further, plaintiffs alleged that they had changed position in reliance on these inducements, in one instance, moving a family and, in the other, leaving a position with another company.

Finally, plaintiffs alleged that, notwithstanding the above inducements, in 1984 defendants eliminated plaintiffs' positions and terminated the Plan. Also, they asserted that, since 1986, defendants have denied their obligations under the Plan and payments have not been made in accordance therewith depriving them of both their salary and their expected awards and benefits under the Plan.

### A.

First, plaintiffs argue that, in light of the foregoing allegations, the trial court erred in dismissing their claims for breach of their basic employment contract. We agree in part.

The record discloses that the trial court dismissed plaintiffs' claims after finding that they had failed to plead specially a claim of promissory estoppel and that, thus, the alleged express contract, neither written nor performable within a year, was void under the Statute of Frauds, § 38–10–112(1), C.R.S. (1982 Repl.Vol. 16A).

■ We agree with the trial court's dismissal of plaintiff's claims relative to the alleged breach of an express contract of employment. In the context of an oral contract for at-will employment, in which the defense of statute of frauds has been raised, such as here, neither the partial performance of services nor the payment of compensation will be deemed sufficient to avoid the bar of the statute as to enforcement of the entire contract. *Hull v. Brandywine Fibre Products Co.*, 121 F.Supp. 108 (D.Del.1954).

Thus, plaintiffs' remaining argument is that the trial court erred in ruling that they had failed to allege facts which would support a claim for promissory estoppel. We agree.

A review of the trial court's order reveals that the court relied on C.R.C.P. 8(c) in dismissing plaintiffs' claim. This rule requires that the *defense* of estoppel be specifically pled. However, inasmuch as the issue here is the sufficiency of plaintiff's *claim* of the right to recover under the doctrine of promissory estoppel, C.R.C.P. 12(b)(5), not C.R.C.P. 8(c), controls the analysis of plaintiffs' claim.

This rule requires that, in determining whether to grant a motion to dismiss, the material allegations in the complaint must be taken as true. Moreover, the complaint should not be dismissed if the plaintiffs can be granted relief under any state of the facts alleged. *Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972).

■ The elements of a claim for promissory estoppel are: (1) A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) action or forbearance induced by that promise; and (3) the existence of circumstances such that injustice can be avoided only by enforcement of the promise. If all of these three elements are present, neither the lack of a written contract under the statute of frauds nor the absence of fraudulent conduct can defeat

the plaintiffs' claim. *St. Germain v. Bosh-ouwers,* 646 P.2d 952 (Colo.App.1982), *rev'd on other grounds sub nom. Kiely v. St. Germain,* 670 P.2d 764 (Colo.1983).

The record reveals that it is the factual sufficiency of the claim as to the third element which is in dispute here.

A number of factors, such as the nature of the representation made by the employer, promise of future financial rewards, the nature of the employee's action in reliance, and the relinquishment of prior/other employment, are relevant in determining whether "injustice" or unconscionable injury has occurred. Annotation, *Action by Employee in Reliance on Employment Contract Which Violates Statute of Fraud as Rendering Contract Enforceable,* 54 A.L.R.3d 715 (1974); *see also* Restatement (Second) of Contracts § 139(2) (1981).

Defendants argue that the only injustice here was non-performance of the contract or a change in residence. Neither, they assert, is sufficient to trigger promissory estoppel.

We agree with defendants that the two factors above are generally insufficient to establish injustice or unconscionable injury. *Rosenthal v. Kingsley,* 674 F.Supp. 1113 (S.D.N.Y.1987); *Cunnison v. Richardson Greenshields Securities, Inc.,* 107 A.D.2d 50, 485 N.Y.S.2d 272 (1985). However, we disagree with defendants that this is the extent of injury alleged by plaintiffs.

■ Specifically, plaintiffs complaint alleges, not only the foregoing, but also that defendants offer included various "inducements" regarding defendants' commitment to the oil and gas division and the promise of future financial rewards. In short, plaintiffs alleged that defendants' offer included an interest in the Plan, the value of which would be substantially greater over time especially if, as defendants had indicated in extending the offer to plaintiffs, the division became a permanent part of defendant Eastern. These future rewards included continuing interests in operating oil and gas wells that would continue even after termination of plaintiffs' employment.

Plaintiffs' allegations clearly touched on a number of the "factors" which are relevant in determining whether injustice or unconscionable injury may have occurred, in particular, the promise of future financial rewards, other than salary, which has been held in other jurisdictions to be sufficient to establish an injury constituting an injustice. *See* Annotation, 54 A.L.R.3d 715, *supra.* Furthermore, in their response to defendants' motions to dismiss, plaintiffs specifically referred to legal authorities regarding claims of promissory estoppel. Thus, the defendants and the court were apprised of plaintiffs' reliance, for their right to recover, upon the doctrine of promissory estoppel.

Accordingly, we conclude that plaintiffs' claim sufficiently alleges facts which if proven would support a promissory estoppel claim and that, thus, the trial court erred in granting defendants' motion to dismiss.

### B.

Next, plaintiffs argue that the trial court erred in granting the motion of defendants Holding, Beacon, and Beacon/Texas for summary judgment on their claims for breach of an additional compensation contract, premised on the foregoing allegations that plaintiffs failed to pay either bonuses or awards under the Plan relative to the wells owned and operated by Mohawk and Beacon. We perceive no error in the trial court's ruling.

Summary judgment is appropriate only when there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981).

The thrust of defendants' motion for summary judgment was that plaintiffs were not entitled to such payments as a matter of law. The record discloses that, in support of their motion, defendants submitted the agreement between Eastern and NICOR wherein NICOR acquired all of Eastern's interest in Holding and its subsidiaries, the affidavit of NICOR's land manager describing NICOR's subsequent

sale of Holding's subsidiary Mohawk and Beacon to Beacon Acquisition, and finally the Plan, one section of which provided:

> With respect to any well in which [Holding] has *disposed of its interest,* no amounts will be credited for revenues after the date of such disposal. The board of directors of [Holding] may, in its sole discretion, make a special credit on account of wells in which [Holding] has disposed of its interest. (emphasis added)

Relying on these documents, defendants argued that plaintiffs were not entitled to the payments they sought, that is, awards and benefits under the Plan for wells owned and operated by Mohawk and Beacon, because in selling these subsidiaries, defendants had "disposed of their interest" in these subsidiaries' wells and because bonuses were, under the language of the Plan, discretionary with the Board.

In their response to defendants' motion for summary judgment, plaintiffs argued an alternative interpretation of the above-quoted section of the Plan. Specifically, they noted that the Plan was silent as to the effect of the sale of a subsidiary, and they argued that this silence indicated that Eastern's obligation to make payments under the Plan continued as long as the wells were owned by the subsidiary from whom they were developed and ceased only when the wells themselves were sold. Moreover, plaintiffs submitted their affidavits to show that the "bonuses" were not intended to be discretionary once the Board of Directors elected not to reinvest the proceeds from the sale of a well.

Rejecting the plaintiffs' affidavits as improper parol evidence, the trial court ruled that defendants' construction of the disputed section of the Plan was consistent with the Plan's clear language and intent. Accordingly, plaintiffs' claims of non-payment were not evidence of breach, and defendants, as a matter of law, were entitled to summary judgment.

As the parties' motions and the trial court's ruling reveal, the defendants' motion for summary judgment turns on the interpretation of the Plan.

We are mindful that this court is not bound by the construction placed upon the Plan by the trial court. *Johnson Homes, Inc. v. Southwest Metropolitan Water & Sanitation District,* 725 P.2d 12 (Colo.App. 1986). Nonetheless, we perceive no error in the trial court's analysis and ultimate ruling in defendants' favor.

■ First, the trial court properly relied on the language of the disputed section to deny plaintiffs' claim for breach premised on the non-payment of bonuses. The provision clearly and unambiguously provides that the issuance of bonuses is vested in the Board of Directors' "sole discretion." Hence, the provision cannot be varied by plaintiffs' extrinsic evidence. *See Buckley Bros. Motors, Inc. v. Grand Prix Imports, Inc.,* 633 P.2d 1081 (Colo.1981).

Second, while we agree with plaintiffs that the Plan does not expressly indicate the meaning of the term "dispose," it is clear from viewing the Plan as a whole that the awards were based on Holding's possession of a "revenue interest" in the well and were calculated based upon the well's net revenue to Holding. A subsidiary which has been sold is neither an entity in whose wells Holding retains a "revenue interest," nor is it an entity which contributes to Holding's net revenues.

In short, the sale of a subsidiary is the equivalent of the sale of a well under the intents and purposes of the Plan. Accordingly, the trial court properly concluded that the language of the provision at issue did not provide a basis for plaintiffs' claim for breach of contract.

### C.

■ Finally, plaintiffs argue that the trial court erred in granting summary judgment in favor of defendant Eastern on their claim for breach of a third-party beneficiary contract. Again, we perceive no error.

In addition to all of the foregoing allegations, plaintiffs alleged in support of this claim that, in agreeing under the Eastern–NICOR sale of the Holding stock to pay

the obligations of employees under the Plan, Eastern undertook and subsequently breached its duties to account for and pay the amounts due the employees under the Plan. We conclude that plaintiffs' argument is flawed on several grounds.

First, as explained above, plaintiffs were not entitled the payments at issue after 1986. Second, the Eastern–NICOR agreement created no rights in plaintiffs as either third-party beneficiaries or sureties.

The provision of the Eastern–NICOR agreement upon which plaintiffs grounded their rights provides in pertinent part:

Eastern shall assume and indemnify and hold harmless Beacon, any Beacon subsidiary, NICOR, and any NICOR subsidiary from and against any and all obligations and liabilities existing as of the closing date....

The trial court concluded, and we concur, that the foregoing provision constitutes no more than an indemnity provision wherein Eastern promised to pay claims which might be asserted against *NICOR*, but did not promise to pay *plaintiffs* if NICOR failed to do so. See *Leatherby Insurance Co. v. City of Tustin*, 143 Cal.Rptr. 153, 76 Cal.App.3d 678 (1977).

Moreover, the trial court's construction is entirely consistent with another provision of the Eastern–NICOR agreement which expressly states that NICOR and Eastern do not intend to confer any rights or remedies on any third parties.

Accordingly, the trial court properly entered summary judgment in favor of defendant Eastern on plaintiffs' claim.

## II.

Next, plaintiffs contend that the trial court's rulings on their tort claims were in error. We disagree.

In support of these claims, plaintiffs generally incorporated the allegations set forth in support of their contract claims.

## A.

First, plaintiffs argue that the trial court erred in granting Eastern's motion for judgment on the pleadings on their claim for breach of fiduciary duty. In support, plaintiffs allege, in addition to the foregoing, that a fiduciary relationship arose when Eastern, for consideration, assumed Holding's obligations to employees under the Plan.

As previously noted, however, under part IB, plaintiffs were not entitled to payments under the Plan after 1986. Hence, the consideration which Eastern received pursuant to the agreement does not constitute funds to which plaintiffs were entitled, thereby precluding, by implication, the existence of a fiduciary relationship between plaintiffs and Eastern.

Accordingly, we conclude that plaintiffs' claim for breach of fiduciary duty is without merit, and the trial court's ruling, albeit for other reasons, was proper under the circumstances.

## B.

Relying on the defendants' alleged representations as to the term of the contract, the operating budget, and the compensation under the Plan, plaintiffs further argue that the trial court erred in dismissing their claims against all defendants for statutory and common-law fraud. We disagree.

The record reveals that, after reviewing the allegations in a light most favorable to plaintiffs, the trial court concluded that plaintiffs' causes of action for fraud, if any, arose in 1984 and 1986. Plaintiffs, however, failed to plead any fraud claims until January 1990 in their second amended complaint, at which time the applicable three-year statute of limitations had run. Thus, the trial court ruled that plaintiffs' claims of fraud were time-barred.

Plaintiffs argue that the trial court erred in concluding that their cause of action for fraud accrued in 1984 and 1986, asserting that the accrual date was in 1988 when defendants took the position that certain promises as to compensation were never made. We disagree.

The three-year statute of limitations for fraud begins to run when the fraud is discovered or should have been discovered by the exercise of reasonable diligence. Section 13–80–108(3), C.R.S. (1986 Repl.Vol. 6A). Accordingly, a cause of action accrues when the defrauded person has knowledge of facts which, in the exercise of proper prudence and diligence, would enable him to discover the fraud perpetrated against him. *Hansen v. Lederman,* 759 P.2d 810 (Colo.App.1988).

We conclude that plaintiffs' termination in 1984 and their failure to receive awards and bonuses under the Plan in 1986 and thereafter were events which should have prompted them to investigate the facts which now underlie their claims for fraud. Accordingly, we perceive no error in the trial court's ruling that, under the circumstances here, plaintiffs' claims for both statutory and common-law fraud were barred by the statute of limitations.

The trial court's judgments in favor of defendants on plaintiffs' claims for breach of an express employment contract, for breach of their additional compensation contract, third-party beneficiary contract, breach of fiduciary duty, and statutory and common-law fraud are affirmed. The trial court's judgment dismissing plaintiffs' claims insofar as the same were based upon promissory estoppel is reversed, and the cause is remanded with directions to reinstate these claims and for such further proceedings as shall be appropriate.

CRISWELL and ROTHENBERG, JJ., concur.